# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK
# SYRACUSE DIVISION

| | |
|---|---|
| DARIUS ADJEI,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>CSX TRANSPORTATION INC.,<br><br>　　　　　　　Defendant. | Case No.　5:24-CV-0082 (GTS/ML)<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**Plaintiff, DARIUS ADJEI, by and through his attorneys, HACH & ROSE LLP**
**complains and alleges of the defendant as follows:**

## INTRODUCTION

1.　　　　This is a complaint brought pursuant to the Federal Railroad Safety Act ("FRSA") (49 U.S.C. § 20109) for economic loss to Plaintiff, as a result of Defendant CSX Transportation, Inc.'s adverse actions in refusing Plaintiff re-employment.

2.　　　　Plaintiff DARIUS ADJEI's work-related adverse action was proximately caused by the reporting of Defendant's unsafe conditions and Defendant's actions and/or omissions following the filing of both a Federal Employers' Liability Act ("FELA") (45 U.S.C. § 51 et seq.) and FRSA Complaint. [1]

---

[1] Because of their exemption from workers' compensation laws, as well as for other reasons unique to the industry, railroad-employers having a financial incentive to retaliate against employees who report injuries. *See, e.g., Report of Majority Staff of the Committee on Transportation and Infrastructure Impact of Railroad Injury, Accident, and Discipline Policies on the Safety of America's Railroads: Hearings Before the H. Comm. on Transportation and Infrastructure*, 110th Cong. (Oct. 22, 2007) ("Hearings"). Because carriers have a long history of acting on this motive, Congress amended the Federal Railroad Safety Act, 49 U.S.C. § 20109 ("FRSA"), adding new prohibitions against railroads, providing employees a private right of action in federal court, and relaxing the standards of proof for retaliation claims. *See, e.g., The Implementing Recommendations of the 9/11's Comm. Act of 2007*, P. L. 110-53, 121 Stat. 444 (Aug. 3, 2007). Courts have recognized that these amendments were intended "to ensure that employees can report their concerns without the fear of possible retaliation or discrimination from employers." *Araujo v. New Jersey Transit Rail Operations, Inc.*, 708 F.3d 152, 157 (3d Cir. 2013) (quoting H.R. Rep. No. 110–259 at 348 (2007) (Conf.

## PARTIES

3.      At all times materials hereto, Plaintiff, DARIUS ADJEI ("Plaintiff" or "ADJEI") was and continues to be a resident of the County of Onondaga, State of New York.

4.      At all times materials hereto, Defendant, CSX TRANSPORTATION INC. ("Defendant" or "CSX") was and is a corporation organized and existing under the laws of the commonwealth of Virginia, with its principal place of business in Jacksonville, Florida, and is authorized to conduct business in the State of New York.

5.      CSX provides freight rail transportation services in several states, including in this division.

## JURISDICTION AND VENUE

6.      This Court has original jurisdiction over ADJEI's FRSA claims under 28 U.S.C § 1331.

7.      Venue is proper under 28 U.S.C. § 1391 because ADJEI worked for CSX in this division, CSX operates in this division, and the "adverse" conduct occurred in this division.

8.      On or about May 18, 2022, Plaintiff filed a FRSA Complaint with the Secretary of Labor Occupational Safety and Health Administration (OSHA) Whistleblower Office, and was assigned a case number, 301016461. The OSA Complaint was filed within 180 days of the dates that Plaintiff became aware of Defendants taking adverse and/or retaliatory actions against him; by denying Plaintiff reemployment.

9.      The Region 2 OSHA Office commenced its investigation, and the Plaintiff fully cooperated with OSHA's investigation. However, OSHA did not issue a final decision within 210

---

Rep.), 2007 U.S.C.C.A.N. 119, 181) (quotation marks omitted). CSX has nevertheless continued to retaliate against its employees who report injuries. This includes against Adjei, for whom CSX manufactured a reason not to re-employ him after he reported his above-referenced injury and unsafe condition.

days after the filing of the FRSA Complaint. The delay was not due to any bad faith on the part of the Plaintiff.

10.     Pursuant to Section (d)(3) of the FRSA, the Plaintiff has a statutory right to bring an original action in the U.S. District Court for a jury trial regarding the railroad's violation of FRSA 49 U.S.C § 20109(d)(3).

11.     Pursuant to FRSA 49 U.S.C § 20109(d)(3), the Plaintiff now is bringing this original action at law in equity for a De Novo review, by the U.S. District Court of the Northern District of New York, which Court has jurisdiction over this FRSA action, without regard to the amount in controversy.

## FACTUAL ALLEGATIONS

12.     Plaintiff was employed by CSX continuously up to the date of his on-the-job injury in this case, or November 15, 2019.

13.     On November 15, 2019, CSX's failure to furnish and provide ADJEI a reasonably safe place to work, reasonably safe conditions for work, reasonably safe appliances for work, reasonably safe equipment for work, and/or reasonably safe methods of work, contributed in whole, or in part to Plaintiff suffering a work-related injury, including, but not limited to multiple fractured ribs, a punctured lung with intubation, and a permanent spinal trauma.

14.     Though, Plaintiff knew it may make him a target for discipline, he immediately reported the injury to Defendant, and moreover, applied and was approved by CSX for reemployment; without physical restrictions.

15.     Despite being approved for reemployment by Defendant on November 14, 2022, on January 23, 2023, Plaintiff as an adverse action to a "protected right" was instructed not to set foot on company property. Plaintiff was advised that his previously approved "return to work"

3

status was now denied, as a result of Plaintiff filing an accident report and FELA Complaint. [2]

## CSX'S RETALIATORY MOTIVE

16.     Congress has explicitly said that "[t]he underreporting of railroad employee injuries has long been a particular problem, and railroad labor organizations have frequently complained that harassment of employees who reported injuries is a common railroad management practice." *Araujo*, 708 F.3d at 159 (citing Hearings).

17.     Railroads' motive to discourage workers from reporting injuries includes that it is exempt from workers' compensation, which means it is liable to employees whose injuries are caused by their negligence.

18.     Railroad's motive to discourage workers from reporting injuries also includes that the agency responsible for enforcing railroad safety laws—the Federal Railroad Administration ("FRA")—uses the number of days lost to reported injuries to determine where it should send its inspectors. See, e.g., Barati v. Metro-N. R.R. Commuter R.R. Co., 939 F. Supp. 2d 143, 148 (D. Conn. 2013) (quoting the testimony of the former head of the FRA's Office of Safety).

19.     CSX also ensures that supervisors have a personal motive to discourage their subordinates from reporting workplace injuries by maintaining an incentive compensation plan whereby it pays its managers a yearly bonus based, in part, on the number of FRA-reportable

---

[2] CSX's collective bargaining agreement with ADJEl's union prevents it from disciplining employees unless they commit a workplace rule violation that rises to a certain level of seriousness. In theory, this lessens the authoritarian-type control railroads have historically wielded over their employees; however, CSX has developed an end-around to this problem. Specifically, it has instituted a voluminous set of vague workplace rules, which are arguably violated—in one way or another—by every employee on a daily basis. Indeed, when a union ensures that all of its members follow the letter of each rule, it engages in a "work-to-rule" campaign, which constitutes a strike under the Railway Labor Act because little to no work can actually be done. *See, e.g., United Air Lines, Inc. v. Air Line Pilots Ass'n,* 2008 U.S. Dist. LEXIS 94750, at *65 (N.D. Ill. Nov. 17, 2008). CSX can therefore follow around an employee of whom it wants to be rid, watching him or her until it observes a workplace rule violation. This is known as "birddogging," a practice with which CSX's employees are familiar. While this seems bizarre outside of the railroad industry, the FRSA was amended exactly because railroads were birddogging employees who objected to railroads' violations of federal regulations. *See, e.g., Impact of Railroad Injury, Accident, and Discipline Policies on the Safety of America's Railroads: Hearings Before the H. Comm. on Transportation and Infrastructure, 110th Cong. 84 (2007).*

injuries employees report (with fewer injury reports translating to higher bonuses). CSX maintains such a compensation plan despite Congress having expressed concern as early as 2008 "that some railroad supervisors [have] intimidated employees from reporting injuries to the FRA, in part, because their compensation depended on low numbers of FRA reportable injuries within their supervisory area. Araujo, 708 F.3d 152, 161 n. 7 (citing Hearings).

### CXS'S RETALIATION WAS PURSUANT TO ITS COMPANYWIDE PRACTICES AND POLICIES

20.     Plaintiff alleges that the previous FELA filing against his employer, solely caused CSX's revocation of Plaintiff's employment status.

21.     It is particularly common and companywide practice at CSX to use a FELA filing and a report of an unsafe condition to justify retaliation against employees who report injuries, and violations of OSHA/CFR Safety Standards.

22.     Despite these and other numerous FRSA violations, CSX has not disciplined a single supervisor for retaliating against employees for engaging in FRSA-protected activity.

### CAUSES OF ACTION

### COUNT I

### VIOLATIONS OF THE FELA AS ALLEGED IN PLAINTIFF'S PENDING ALBANY SUPREME COURT ACTION

23.     The FELA provides that CSX is "liable in damages to any person suffering injury while he is employed by such carrier in such commerce . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment." 45 U.S.C. § 51.

24.     On November 15, 2019, CSX negligently failed to furnish and provide ADJEI a

reasonably safe place to work, reasonably safe conditions for work, reasonably safe appliances for work, reasonably safe equipment for work, and/or reasonably safe methods of work.

25.     CSX's negligence caused an injury to ADJEI's ribs and lung, resulting in permanent injury.

26.     The injuries and damages sustained by Plaintiff were caused, in whole or in part, by CSX's negligence, in violation of the FELA, when CSX failed to provide Plaintiff with a reasonably safe place to work, which caused ADJEI to suffer severe, permanent, and painful injuries to his ribs, lungs, cervical spine, and lumbar spine.

27.     The above-described acts and omissions of CSX include CSX's violation of one or more safety rules, regulations and statutes, including CSX's own rules, which constitute strict liability against CSX.

28.     On account of said injuries, Plaintiff has undergone extensive medical care and treatment and will be required to seek medical treatment in the future. Even with such treatment, the strength, use, and function of his lungs, cervical spine, and lumbar spine, and general health and strength have been permanently weakened, diminished, and impaired.

29.     As a result, of Plaintiff's FELA lawsuit, now pending in Albany County, Supreme Court, Defendant herein first learned of the extent of Plaintiff's injuries, as well as the extent of the unsafe track conditions.

30.     Plaintiff has lost and will continue to lose past and future earnings as a result of Defendant's adverse action in refusing to reemploy Plaintiff.

## COUNT II

## VIOLATIONS OF THE FRSA

31.     The FRSA prohibits railroads from demoting, suspending, reprimanding, or in any

other way discriminating against an employee for engaging in protected activity. Protected activity includes "notify[ing], or attempt[ing] to notify, the railroad carrier . . . of a work-related personal injury" 49 U.S.C. § 20109(a)(4).

32.     The FRSA also prohibits railroads disciplining or threatening a discipline to employee for following orders or a treatment plan of a treating physician. 49 U.S.C. § 20109(c)(2).

33.     Plaintiff engaged in protected activity by reporting his injury and in being approved for full duty by Defendant, after achieving maximum medical improvement.

34.     Defendant, CSX knew Plaintiff had engaged in protected activity when CSX supervisors refused to return Plaintiff back to employment after being duly cleared to do so, by Defendant.

35.     Plaintiff's protected activity contributed to CSX refusing reemployment to him. Indeed, it was the but-for cause.

## REQUEST FOR RELIEF

36.     Plaintiff requests that the Court find Defendant acted in direct violation of FRSA.

37.     Plaintiff, ADJEI, further requests that the Court order Defendant, CSX, to take the following actions for each party individually, as follows:

- Pay to him an award for compensatory damages arising from loss of past and future income (or potential loss of income) and benefits in an amount to be determined by the trier of fact;

- Pay to him an award for costs (including litigation and expert costs), disbursements, and attorneys' fees; and

- Pay to him an award of $250,000 for punitive damages

38.     Plaintiff seeks punitive and compensatory damages to readdress the adverse

actions denying Plaintiff reemployment under the Federal Railroad Safety Act, and attorney fees.

39.     Plaintiff further requests that the Court order judgement against Defendant, CSX for all other relief available under the FRSA and such other relief the Court deems just and equitable.

Dated: New York, New York
        January 17, 2024

                                        HACH & ROSE LLP

                                        By:  *Mark G. Sokoloff*
                                             Mark G. Sokoloff
                                             Bar No.: 1800838
                                        *Attorneys for Plaintiff*
                                        112 Madison Avenue, 10th Floor
                                        New York, NY 10016
                                        (212) 779-0057
                                        info@hachroselaw.com
                                        MGS@hachroselaw.com

8